C. McLAUGHLIN, Plaintiff in Error, v. CONCORDIA COL-LEGE ET AL., Defendants in Error.

St. Louis Court of Appeals, December 8, 1885.

AGENCY — CONTRACTS — VOLUNTARY ASSOCIATIONS. — A corporation organized and chartered for the purpose of holding title to a college building and property erected and maintained by a religious denomination, is bound by contracts made by the synod of the denomination for the erection of the building, the synod being a shifting, unincorporated body, which, however, controls the corporation.

ERROR to the St. Louis Circuit Court, DANIEL DILLON, Judge.

*Reversed and remanded with directions.*

P. LEAHY & McGOWAN, for the plaintiff in error.

HENRY KORTJOHN, for the defendants in error.

THOMPSON, J., delivered the opinion of the court.
The plaintiff brought an action against the defendant

before a justice of the peace upon an account for a balance due for work and labor done. He recovered a judgment before the justice and the defendant appealed to the circuit court.

On the trial in the circuit court he gave evidence to the effect that he was employed by Mr. Walsh, the architect and superintendent of Concordia college at the time of its erection in 1882, to do certain excavating. That he rendered services under this employment of the value of $171.35; that the sum of $91.35 was paid him, leaving a balance of eighty dollars still due.

Otto Hausen testified on the part of the defendant that he was secretary of a committee consisting of five members appointed by the German Evangelical Synod of Missouri, Ohio, and other states; that said synod held its meetings annually in Missouri, Ohio, and other states; that it was not an incorporated body; that the name of the college is the German Evangelical Lutheran College and Seminary; that the sign on the building was Concordia college.

The record then recites: "It was admitted that the defendant was incorporated. Defendant introduced testimony tending to show that the plaintiff sued the wrong defendant, to which testimony said plaintiff objected, but the court overruled the objection, to which ruling of the court the plaintiff then and there excepted. Defendant admitted that there were $85.20 due to the plaintiff; as rendered by the justice, for services had and received in excavating the grounds for the foundation of the college. This was all the evidence offered on the part of the defendant."

The plaintiff then called Mr. Walsh, who testified that he was architect and superintendent of Concordia college in August and September, 1882, when the plaintiff worked there; that he gave him the time that he and his boys worked there; that the sign on the college denoting the name is Concordia seminary. He said: "May was the architect and he employed me. He employed me to superintend the work, and I employed McLaughlin,

the plaintiff. May usually furnished me with money to pay the men who were employed on the building."

Mr. Meyer testified as follows : " I am treasurer of the German Evangelical Lutheran Synod of Missouri, Ohio, and other states. The name of the college is Concordia college. The synod is composed of more than one thousand congregations scattered all over the country. The congregations send their representatives to the meeting of the synod. The synod is composed of clergymen and laymen. They hold their meetings annually in different parts of the country, Missouri, Ohio, Indiana, and other states. The synod appoint the committee for the government of the college. I am treasurer of the synod. I pay everything for the building of the college with the money of the synod. The college was erected from the money received by the synod from the voluntary contributions of the congregations all over the country. I paid for everything with the money received from the synod. The college is controlled and directed by the synod. They appoint the members of the faculty of the college and the different committees of it. I was treasurer of the synod and of the building committee when the college was in course of erection. I know Mr. May, the architect. The synod appointed him to superintend the work on the college, and he was paid for his services through me as treasurer. I paid the taxes of the college from the funds that I got from the synod. The students of the college pay nothing for their education. The object of the college is to prepare young men for the ministry of the church."

Henry Westerman also testified as follows : " I am supervisor of the college. There are five of us. I was appointed by the synod when in session here in St. Louis. The synod controls the college. Its object is to prepare young men for the ministry. The college is owned and controlled by the synod."

The plaintiff read in evidence the act incorporating the college from the Session Acts of 1852, p. 271. The title of the act is : " An act to incorporate The Concordia Col-

lege of the German Evangelical Lutheran Synod of Missouri, Ohio, and other states." It recites in its preamble that the members of the German Evangelical Lutheran Synod of Missouri, Ohio and other states, and their friends, are desirous of building and endowing a college in this state, to be called The Concordia College, for the purpose of aiding in the dissemination of knowlege, including all branches of academic, scientific, and theological instruction in general, and giving, moreover, to suitable persons desiring it, instruction in the creed and tenets of said denomination in particular. It then proceeds in the usual form to incorporate a number of named persons and their successors, by the name of "The Trustees of the Concordia College," and recites their corporate powers, among which are, " to hold by gift, grant, demise, devise, or otherwise, any land, tenements, hereditaments, moneys, rents, goods, chattels, of whatever kind the same may be, which is or hereafter may be given, granted, devised, demised to, or purchased by them, for and to the use of the aforesaid college, and may sell and dispose of the same or any part thereof, or lease, rent, or improve the same in such manner as they shall think most conducive to the interest and prosperity of said college, and such property, real or personal, shall be held and applied in good faith solely for the purpose of education as set forth in the preamble of this act, and for no other or different purpose whatever." Section 11 is as follows : "It shall be the duty of the board of trustees, as soon as the funds of the institution will justify it in their opinion, to cause to be erected a suitable building for a college and residence for the professors and students, or to procure the same by purchase or donation."

No instructions were asked or given ; but the learned judge of the circuit court, sitting as a jury, gave judgment on the foregoing evidence for the defendant.

As a general rule, where instructions are not prayed for in cases tried by the court without a jury, we have not on appeal suitable material for reviewing the judgment, because we may not be able to see from the record upon

what view of the law it was rendered.  But in this case
the amount claimed by the plaintiff is admitted by the
defendant to be due, and the record shows throughout
that the only question contested was whether it is due
from the defendant or from some other person ; and the
learned judge must have been of opinion that the plain-
tiff had not·connected the defendant with the contract in
,such a manner as to charge it.  The record calls up a
question which has perplexed the courts in many cases,
namely, how to enforce the obligations of those vague
and indeterminate bodies known as religious societies.
·The persistency with which they have litigated on
grounds manifestly unjust and unconscionable has often
scandalized the profession of religion, and I have never
known of a worse case of this kind than the one pre-
sented by this record.  In despair of finding settled legal
grounds upon which to hold such bodies and their mem-
bers to the doing of justice, eminent judges have some-
times been driven to say that courts deal with them in
the best way they can to prevent a failure of justice.
Lord Eldon in *Adley v. Whitstable Co.*, 17 Ves. 324 ;
Williams, C. J., in *Bigelow v. Congregational Soc.*, 15
Vt. 373.

Fortunately, the common law has within itself prin-
.ciples more or less active, which, in cases of this kind,
-can generally be appealed to to this end.  One of these
principles is that a corporation which takes and retains
the benefit of a contract made for it by its promoters,
.although made prior to its corporate existence, is estop-
ped to deny that the contract of such promoters, in pur-
.suance of which it received this benefit, is its contract.
It is difficult to rest this conclusion upon any strictly
logical principle of law.  It does not rest upon the mere
.ground of agency, for there can be no agent without a
principal *in esse*.  It does not rest strictly upon the
ground of the ratification by a principal of his agent's
acts, because, in order to such a ratification, the principal
must be in existence at the time of the act done by the
.agent.  But it is, nevertheless, an obvious conclusion of

justice which is plain to every man, and it is believed to be well settled law. Pollock, Cont. 192; 1 Lindl. Part. 393, 397, 400.

A corporation not in existence may thus become charged with responsibility for a contract created for it by those who have taken upon themselves the work of organizing it. For stronger reasons, it should seem, a corporation which has a legal existence may be charged by a contract made for it by a larger body consisting of an unincorporated voluntary association, by whom and for whose purposes the corporation had been created and is governed and sustained.

It sufficiently appears from this record that the German Evangelical Lutheran Synod of Missouri, Ohio, and other states procured, thirty years before this work was done for which this suit was brought, from the legislature of Missouri, the creation of a corporation for the purpose of erecting, owning, and using a building in this state as a college or seminary of learning; that the synod finally proceeded in 1882 with the erection of the building in the usual manner in which such societies proceed in such cases, namely, by appointing a committee to have charge of the work and to disburse the funds provided by the synod for that purpose; that this committee appointed an architect of the building, Mr. May; that this architect appointed a sub-agent known in building contracts as "architect and superintendent," and that this architect and superintendent employed the plaintiff to do certain excavating for the foundation, who did the same to the value of $171.35, for which he received pay from funds provided by the synod and disbursed through the treasurer of the building committee, the architect, and the architect and superintendent, to the amount of $91.35, leaving the sum of eighty dollars unpaid. Now, the gentlemen composing this building committee manifestly did not intend to bind themselves personally. They were contracting as agents on behalf of a principal. It does not appear that in making this contract they, or the agent whom they selected to make it, disclosed the

name of their principal. They could not have intended to bind personally the persons who for the time being composed the synod. They could not bind the synod as a body, because it being unincorporate could not make or take contracts or be impleaded in law. The law is that a person who makes a contract under such circumstances must either produce a principal capable of being impleaded in law or respond personally for a breach of the contract. *Simmons v. Mo. Pacific R. R. Co.*, 19 Mo. App. 542 ; *Fay v. Richmond*, 18 Mo. App. 355 ; and cases cited.

As they did not intend to bind themselves personally ; as they did not intend to bind the members of the synod for the time being ; as they could not bind the synod as a body, the legal inference is inevitable that they intended to bind the only legal person that could be bound in the premises, namely, the corporation. It seems, therefore, that the conclusion at which we arrive may be rested upon the doctrine of the liability of an undisclosed principal for the contracts of his agent made in his behalf. There was a chain of agents beginning with the superintending architect, Mr. Walsh, the gentleman through whom the contract was immediately made, reaching back through the architect, Mr. May, the building committee, and the members of the synod for the time being, to the corporation, which was to be the owner of the property and the recipient of the benefit. It clearly appears that the building committee were the agents of what the defendant's witnesses chose to call the synod. It appears with equal clearness that the synod was not only the agent of the corporation, but its agent in the largest sense in which an agent can ever represent a principal. It was its creator, its governor, its constituent body. It appointed its trustees, made its contracts, controlled its action. The corporation was a mere legal entity which had been manifestly created by the synod out of itself and endowed with corporate capacity by the legislature for the purpose of being able to hold property. There was not only an agency of the

largest character on the part of the synod for the corporation, but there was such a substantial identity between them that whatever the synod did for the corporation may be regarded in legal contemplation as having been done by the corporation.

It seems, then, that whether it is put upon the ground of agency or upon the ground of estoppel, the result is equally clear. The principal can not take and keep the benefit conferred by the act of the agent and say that it did not authorize the doing of the act. The corporation can not take and keep what has been done for it by its creditors, sustainers, and managers, without being estopped from saying that it is not answerable for their contracts made in its behalf.

Beyond this, the defendant solemnly admits upon its record "that there is $85.20 due to the plaintiff, as rendered by the justice, for services had and received in excavating the grounds for the foundation of the college." How rendered by the justice? Obviously, in his judgment, which was a judgment against this defendant for the sum of $85.20 and costs. "For services had and received," by whom? Not by the synod, as the defendant endeavored to show, and as the court seems to have held, because the synod, being incapable of owning the property or of making and taking contracts, could not, in a legal sense, be the recipient of the benefit; not by the committee, because they were manifestly acting only as a body of agents, and not for their own purposes as individuals; but for the corporation, this defendant, for whom alone they could, in contemplation of law, be the agents in the premises, unless we may regard them as also being the agents of the shifting individuals who may have composed the synod at that time.

The judgment of the circuit court will be reversed and the cause remanded with directions to enter a judgment for the plaintiff in the sum of $85.20 and costs. It is so ordered. All the judges concur.