## SAMUEL QUINN, Appellant, v. AMERICAN BANKERS' ASSURANCE COMPANY, Respondent.

### St. Louis Court of Appeals, April 7, 1914.

1. **CORPORATIONS: Obligations Created by Promoters: Ratification.** A corporation may adopt obligations created by its promoters for its benefit prior to the time it came into legal existence.

2. ————: **Liability on Contracts of Officers.** Although money advanced to the vice-president of a corporation for its benefit was credited by the latter in the books of another corporation, organized as a stock selling agency of the first corporation, the first corporation was liable to the person who advanced it, especially where he was not a party to the method adopted by the vice-president in making the credit.

3. ————: ————: **Ratification.** The fact that money advanced to the vice-president of a corporation for its benefit was credited by him in the books of another corporation, organized as a stock selling agency of the first corporation, would not prevent a recovery against the latter by the person who advanced the money, where it subsequently ratified and adopted its vice-president's act in borrowing the money, by voting to issue certain shares of its capital stock to such person, in repayment.

4. ————: ————: **Pleading: Estoppel.** In an action against a corporation to recover money advanced to its vice-president for its benefit, a defense pleaded in the answer, that certain

shares of defendant's capital stock were issued to plaintiff in the name of the vice-president, on account of the indebtedness, estopped defendant to deny that the money was advanced to it.

5. ————: ————: **Instructions.** In an action against a corporation to recover money advanced, before and after its incorporation, to one of its promoters, who became its vice-president and general counsel, where the evidence showed that the money was used in behalf of the corporation and that it ratified the act of its promoter and vice-president and voted to issue stock in the name of the vice-president to repay plaintiff, and also tended to show that the vice-president was not authorized to receive stock in behalf of plaintiff, it was error to charge that if the money was advanced by plaintiff to the promoter and vice-president, to be used by him or to reimburse him for expenditures made in the organization of the corporation in his name, and if he received money or stock from defendant as an equivalent for the money advanced, to find for defendant, since it took from the jury the question of whether the vice-president was authorized to receive stock for plaintiff.

6. ————: ————: ————. In an action against a corporation to recover money advanced to its promoter and vice-president, for its use, before and after its organization, where the evidence showed that the money was used in defendant's behalf and that the acts of the promoter and vice-president were ratified by defendant, an instruction to find for defendant unless the money sued for was advanced to defendant, and that payments or advances to the vice-president, unless paid to defendant with its knowledge or the knowledge of its officers that they were made by plaintiff and so accepted, did not constitute payments to defendant, was erroneous, as ignoring the fact of ratification.

7. **INSTRUCTIONS: Assumption of Facts: Ignoring Defenses.** An instruction which assumes a certain state of facts to be true, when there is evidence tending to prove it is not true, or which authorizes a recovery by plaintiff without requiring a finding on a defense which there is evidence tending to establish, is erroneous.

8. **CORPORATIONS: Reorganization: Liability of Reorganized Company for Predecessor's Debts.** Where the officers of a Missouri corporation formed a new corporation with the same name, under the laws of Delaware, and subscribed for its entire capital stock, in trust for the stockholders of the Missouri corporation, and a large majority of the stockholders surrendered their stock in the Missouri corporation in exchange for stock in the Delaware corporation, which thereupon, by mutual consent, appropriated the assets of the Missouri corporation, with the exception of a *pro rata* portion

thereof which was distributed among a few stockholders declining to participate in the new corporation, and the officers in the Missouri corporation succeeded to the same offices in the Delaware corporation, which continued the business as if no change had occurred, the latter was liable for the debts of the Missouri corporation at law as well as in equity.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. B. Homer*, Judge.

REVERSED AND REMANDED.

*Brownrigg & Mason* for appellant.

(1) Actual authority of an officer to make contracts or to act in a certain capacity for a corporation may be shown not only by resolution of a board of directors, but by inference or from his being allowed for a considerable period with the knowledge of the directors to exercise the authority. Tyler's Estate v. Hoffman, 146 Mo. App. 510; Washington, etc., Bk. v. Butchers, etc., Bank, 107 Mo. 33. (2) Not only is it unnecessary that there be previous authority or formal ratification to make an agent's act binding on his corporation but if an agent does an unauthorized act for a corporation, it will be held to have ratified that act if it neglects to promptly disavow such act upon learning thereof. First Nat'l Bk. v. Fricke, 75 Mo. 178.

*Arthur N. Sager* for respondent.

The American Bankers' Assurance Company of Delaware (respondent) was not liable for the debts of the American Bankers' Assurance Company of Missouri. There was no evidence that the Delaware corporation had expressly or voluntarily assumed the debts of the Missouri corporation. There was no showing of fact which, in law, rendered the Delaware corporation liable for the debts of the Missouri corporation. Austin v. Nat'l Bank, 49 Nebr. 412; Holden v. Phoenix Rattan Co., 47 N. E. 241; Houston Ice & Brew. Co. v. Nicolini, 96 S. W. 84; Houston Ice & Brew Co.

v. Stratton, 89 S. W. 1111; Burge v. Railroad, 100 Mo. App. 460; Powell v. Railroad, 42 Mo. 63; Berthold v. Land Company, 91 Mo. App. 233; 10 Cyc., p. 287; Clark & Marshall on Private Corporations, Sec. 342, p. 3395.

NORTONI, J.—This is a suit for money advanced to the use and benefit of defendant's predecessor, the American Bankers' Assurance Company, incorporated under the laws of Missouri. The finding and judgment were for defendant, and plaintiff prosecutes the appeal.

Defendant, American Bankers' Assurance Company, is a corporation organized and existing under the laws of the State of Delaware and appears to be a mere continuation of the prior company by the same name which was organized under the laws of Missouri and to whose benefit plaintiff advanced the money here sued for.

Plaintiff, Samuel Quinn, together with John B. Christensen, H. A. Vrooman and Ernest A. Peters promoted and organized the American Bankers' Assurance Company, which was incorporated under the laws of Missouri on October 1, 1909. The object and purpose of the company was to insure depositors in banks against loss, and the home office was located in the city of St. Louis. By the charter of the company, its capitalization was authorized at one million dollars, to be divided in as many shares of stock, of the par value of two dollars per share; one-half of which amount to constitute a surplus fund. The evidence is conclusive, and, indeed, it seems to be conceded, that the four persons named—that is, plaintiff, Quinn, Christensen, Vrooman and Peters—agreed among themselves to advance equal portions of such an amount of money as was necessary to organize and launch the company, the amounts so advanced by each to be repaid them by the company after it came into

existence. At the time, plaintiff was engaged in Oklahoma in connection with the launching of an institution known as the Mid-Continent Life Insurance Company, and, therefore, in a measure, he depended upon Christensen to represent him, when absent, in the matter of organizing the American Bankers' Assurance Company. When the parties were about ready to incorporate the American Bankers' Assurance Company, Christensen wrote plaintiff to send on his portion of the money to be used for that purpose—that is, $150. In response to this letter, plaintiff forwarded Christensen his check for $150 in the latter part of September, 1909, and Christensen employed the money realized thereon in incorporating the company, on the first day of October thereafter, as he did a like sum contributed by himself, Vrooman, and Peters. This one payment of $150 so made by plaintiff to be used for the purpose of incorporating the company was made prior to the incorporation, but subsequent payments were made thereafter. Upon the company being incorporated, Ernest A. Peters was elected president thereof by the first board of directors and John B. Christensen vice-president and also its general counsel. While all of these parties seem to have been active in the matter of organizing and launching the company, it appears that Christensen was the principal figure, or the more active one of the number, and this may be because he was the general counsel of the company and a lawyer, possessed of special knowledge with respect of such matters. Christensen and plaintiff Quinn were intimate friends, and it appears, in the absence of plaintiff, Christensen advanced some money for him toward the end desired.

Immediately after the incorporation, and after Christensen's election as vice-president and general counsel, he, with the knowledge and consent of all of his associates, expended several thousand dollars in advertising the company, getting out literature, pro-

viding offices, furniture, etc., and called upon his associates for their contributions under the original agreement. In response to this call, plaintiff sent Christensen $250 in December, 1909, that is, after the company was a going concern, and $600 more about the first of January, 1910. The entire payments so made by plaintiff amounted to $1000, the first $150 of which was paid immediately before the incorporation of the company, but to be used in procuring its charter, and the remaining $850 after the company was organized, and to Christensen, its vice-president and general counsel, and all for the use and benefit of the company. It was agreed, before any payments were made, and the understanding was continued throughout, that each of the four original incorporators, including plaintiff, should be repaid by the company, either in stock or cash, as they should elect.

Plaintiff's business in Oklahoma in connection with the Mid-Continent Insurance Company made such demands upon his time as to render it impossible for him to become actively identified with the American Bankers' Assurance Company, and because of this he elected to withdraw and take compensation in money rather than in stock for the amounts so advanced. To this end, he wrote Christensen a number of letters and also visited him and urged the payment of his claim in money. Christensen wrote plaintiff several letters putting him off from time to time, but all of which acknowledged his claim as a valid one, and in one letter Christensen suggested that he would take stock in the company on account of plaintiff's claim and pay plaintiff the money himself. Plaintiff answered this letter promptly, to the effect that he did not care who paid him the money, but he did not want stock in the company, and he would not give his consent to "shifting" the claim from the company to Christensen, but looked to the company for its payment. It appears that Christensen reported the mat-

ter of plaintiff's claim to the executive committee of the American Bankers' Assurance Company and they discussed it fully. Christensen informed the officers of the company touching the matter and that plaintiff had advanced $1000 for the use and benefit of the company, $150 of which was advanced before the incorporation and $650 after it was a going concern; that the money was used for the benefit of the company, and that it was agreed on the part of himself and his associates it should be repaid by the company. Indeed, Mr. Peters, president of the company, knew of this, and so, too, did Mr. Vrooman another director, for they together with Christensen and plaintiff, Quinn, were all parties to the arrangement, and each advanced an equal amount thereunder. It appears the company issued stock to all of these parties, save plaintiff, in payment of the advances so made by them, but as plaintiff demanded the money instead, his claim, though recognized, was deferred from time to time.

During the month of January, 1910, some change was made in the officers of the company, and Mr. H. M. Ruby became its president and Mr. A. C. Landon, secretary and treasurer. These gentlemen were also members of the executive committee. Finally plaintiff insisted that he should be repaid, not only his $1000 but $14 interest accumulated thereon, as well, and thereupon, on April 22, 1910, Mr. John B. Christensen, vice-president and general counsel of the company, presented this claim to the executive committee, by which it was ratified, and 507 shares of stock of the company, at two dollars per share, of the par value of $1014, were issued to John B. Christensen in payment thereof. It is said that Christensen informed the executive committee that plaintiff did not care to have stock issued in his own name, and, therefore, requested it should be issued in the name of Christensen, but in payment of plaintiff's claim, and that Christensen would hold it in trust for him. Both sides reveal the

facts in evidence to the effect that the company recognized plaintiff's claim on that day, and ratified the acts of Christensen in contracting the indebtedness, by issuing the 507 shares of stock to compensate it. Indeed, plaintiff sets forth in his petition this transaction as a ratification and relies upon it in part for a recovery, while defendant pleads the same in its answer as a settlement of the demand sued upon. However, the evidence is, on the part of plaintiff, and Christensen testifies to the same effect, that Christensen had no authority whatever to represent plaintiff in procuring the issue of the stock on account of the indebtedness thus recognized, and Christensen says this stock was issued to him, not for the plaintiff, but for him personally, on account of an indebtedness in that amount of the company to him. At any rate, it appears that these 507 shares of stock were held by Christensen until some time in July, when he sold them to Mr. Ruby, Mr. Landon and Mr. Peters for cash, and that plaintiff never received either stock or money on account of his claim here in suit.

Plaintiff says he knew knothing about this transaction at the time, and that he did not authorize Christensen to take the stock for him, but insisted at all times upon having the money to recompense the advances made by him to the use of the company. Christensen says that he had no authority to represent plaintiff in respect of that matter, except to insist upon the company paying him the $1014, which he claimed, and that the 507 shares of stock issued on April 22 to him were not issued for plaintiff at all. Touching the transaction by which Christensen disposed of this stock in July thereafter, Christensen says that it was sought to equalize the stock holdings in the company between himself and the other active officers—that is, Messrs. Ruby, Landon and Peters. To this end, he sold and transferred nineteen shares of this stock for $38 to A. C. Landon, 169 shares for $338 to E. A. Peters and

319 shares for $638 to Harry M. Ruby, and they paid him therefor. Two of the gentlemen who thus purchased the stock—that is, Messrs. Ruby and Landon—say Christensen represented to them that plaintiff, Quinn, insisted upon having his money instead of stock in the company, and that they, therefore, in a spirit of fairness, divided the stock among themselves as above indicated and paid Christensen the money, to be paid in turn by him to plaintiff, and that Christensen thereupon assigned the stock to them; while the third officer, Peters, insists he doesn't remember anything definitely about the transaction, save that he procured from Christensen at that time 169 shares of the stock.

From what has been said, it is obvious the real controversy in the case pertains to the matter of Christensen's agency, if any, for plaintiff, in settling the claim against the company, for it appears to be conceded that plaintiff in the first instance advanced the money to Christensen, his co-promoter, for the use of the corporation and that the money was so employed by Christensen. Thereafter the company recognized an obligation to compensate plaintiff for these advances made to Christensen for its benefit, and, according to all of the evidence on both sides, save that of Christensen alone, who testified as plaintiff's witness, the company ratified Christensen's act in inducing plaintiff to advance the money for the use of the company and adopted the transaction as creating a debt against it, on April 22, 1910, when it issued 507 shares of stock to Christensen for plaintiff in payment thereof. It is true plaintiff's witness, Christensen, says this stock was not issued to him for plaintiff, but he also says that the officers of the company at all times recognized an obligation on its part to pay the debt, but deferred it, and that the stock issued on April 22 was issued to him personally for an independent

indebtedness on the part of the company to him, and not the plaintiff.

Though it be that $150 of the amount sued for was advanced by plaintiff to Christensen for the use of the company in the latter part of September, 1909, a few days before its actual incorporation, there can be no doubt that it was competent for the company, after its incorporation and the election of officers, to ratify Christensen's act in procuring this advancement and using it for the benefit of the company which subsequently came into existence. Touching this advancement made before the actual incorporation, the rule is, that although the corporation can incur no liability until it has an existence—that is, until the breath of corporate life is infused into it—for that, until then, it may have no authorized agent to enter into contracts, it may nevertheless subsequently, when the organization is complete, adopt obligations created for its benefit by the promoters. In this view, it is said by Judge Thompson, in his valuable work on Corporations, Vol. 1 (2 Ed.), Sec. 95, that "When the organization is complete and its managing officers duly selected, it may then adopt the contracts made by the promoters or corporators and make such contracts its own. The rule now obtains almost universally, that when a corporation adopts or ratifies a contract made by its promoters for and on its behalf, it becomes liable thereon. This liability is held to be, both at law and in equity, not merely for the benefits received, but on the contract itself. The adoption of the contract is on the theory that the contract made by the promoters is a continuing offer on the part of the other party to the contract, unless withdrawn by him, and that it may be accepted and adopted by the corporation after its organization." [See McLaughlin v. Concordia College, 20 Mo. App. 42, 46, 47; Hill v. Gould, 129 Mo. 106, 130 S. W. 181.]

In the matter of the $250, advanced in December, 1909, and the remaining $600 advanced by plaintiff in January, 1910, to Christensen, for the use and benefit of the company, there can be no doubt as to the obligation created for repayment. Indeed, at the time when these advancements were made, Christensen held both the office of vice-president and general counsel and was also a director of the company. The evidence is conclusive that this money was advanced as a loan to the corporation and for its benefit. Although it appears that these advancements were credited in the books of the State Investment Company, which was merely a stock-selling agency of the American Bankers' Assurance Company, it was actually used for the benefit of the latter company.

Much is said by defendant about the fact that these advancements were credited in the books of the State Investment Company, of which Christensen was an officer, as if the advancements were to it, but this is wholly beside the case. It appears the State Investment Company was a corporation organized by Christensen and some other parties with a view of selling the stock of the American Bankers' Assurance Company; but this plaintiff was neither a stockholder nor officer in that concern. It is true plaintiff originally intended to become a party to a stock-selling contract with the American Bankers' Assurance Company, and it may be that the stock was to be sold through the agency of the State Investment Company, but plaintiff abandoned this idea entirely and entered into no contract whatever, for the reason that his duties in connection with the Mid-Continent Life Insurance Company forbade him. However all of this may be, the evidence relating to the State Investment Company and the purpose to sell the stock of the American Bankers' Assurance Company through it is wholly immaterial, in view of the fact that it appears the American Bankers' Assurance Company ratified the transactions

of Christensen through which he obtained the advances from plaintiff for its benefit and adopted the same as its debt.  It is certain, on all the evidence, that plaintiff advanced the several sums of money involved here to Christensen for the use and benefit of the American Bankers' Assurance Company and that Christensen employed the money to that end.  The mere fact that Christensen may have credited the advancements by plaintiff in the books of the State Investment Company and then caused checks of that company to issue, which were used in paying out the money for the benefit of the American Bankers' Assurance Company, amounts to naught.  The substance of the transaction remains the same whatever form it assumed, and, moreover, it appears that plaintiff was no party to the method adopted by Christensen through his company—that is; the State Investment Company —for plaintiff was in nowise interested in it and had no knowledge concerning the course pursued.  But aside from all of this, the American Bankers' Assurance Company recognized the fact that plaintiff's money was used by Christensen for its benefit, and ratified and adopted his acts in so doing, for, on April 22, it issued 507 shares of stock to Christensen, as all of its then officers, who gave evidence for defendant, say, to liquidate the identical debt here sued for.  No one suggests that Christensen was not authorized, after the corporation was organized and he became its vice-president and general counsel and the active officer, to procure the two last advancements on its part from plaintiff and use the money for the benefit of the company, and if he was without authority at that time, it was competent for the company to ratify and adopt his unauthorized act in the premises and together therewith the indebtedness thus contracted, as it did on April 22, 1910.  [See Washington Sav. Bank v. Butchers' etc. Bank, 107 Mo. 133, 17 S. W. 644; Bank v. Fricke, 75 Mo. 178.]  Indeed, defendant's answer

in the instant case estops it to assert the contrary with respect of this matter, for it expressly pleads as a defense to the action that it paid plaintiff's claim by issuing 507 shares of stock to him on April 22, 1910, in the name of John B. Christensen on account of the indebtedness here sued for.    Moreover, its officers— that is, each and all of defendant's witnesses—the prior president, that is, Mr. Ruby, and its present officers, including president, secretary and treasurer, all testify to the same effect.    This being true it appears to be conceded on the part of defendant that plaintiff advanced the $1000 sued for to Christensen for the use and benefit of the American Bankers' Assurance Company so organized in Missouri and that the company recognized this and adopted the obligation to pay it on April 22, 1910.

Touching this matter, there is no controversy in the case save that pertaining to the matter as to whether or not Christensen was authorized to receive the 507 shares of stock issued to him for plaintiff, and as to this plaintiff says he was not and so, too, says Christensen.    While, on the other hand, it is insisted on the part of defendant that Christensen was the agent of plaintiff in that transaction.    The court did not submit this issue of the fact to the jury in proper form but instructed at the instance of defendant as follows:

"The court instructs the jury that if they find and believe from the evidence that the sums of money alleged to have been paid by plaintiff in this case were paid to the witness John B. Christensen, to be used by him, or to reimburse him for expenditures that he had made in the organization of the American Bankers' Assurance Company of Missouri, and they further find that said Christensen made said expenditures in his name, and that he received from the said American Bankers' Assurance Company of Missouri money or stock as an equivalent for said sums of money al-

leged to have been advanced by plaintiff then your verdict should be for the defendant.''

The instruction is erroneous, for there is abundance of evidence in the record tending to prove that Christensen was not the agent of plaintiff to receive the stock of the company in payment of the advances made by him. It is true plaintiff mailed his several checks to Christensen when the advances were made and it is true, too, that Christensen used this money for the benefit of the corporation, but this is not conclusive evidence to the effect that Christensen was plaintiff's agent at all times thereafter, so as to conclude him by an act of Christensen in accepting stock in settlement of the debt. The instruction authorizes a finding for defendant upon its appearing to the jury that plaintiff paid the money to Christensen, either to be used by him or to reimburse him for expenditures he had made in the organization of the company, provided the jury further found that Christensen made the expenditures in his name and thereafter received stock or money from the company equivalent thereto. This would seem to assert, when considered in connection with the facts of the case, that the mere fact Christensen paid out plaintiff's money as if expending it himself—that is, by his individual check or it may be through the State Investment Company either—concludes the matter of his agency for the purpose of receiving stock from the American Bankers' Assurance Company to reimburse plaintiff, or rendered the debt one in favor of Christensen personally. Obviously such is not the law of the case, for at the time when the stock was issued to Christensen, plaintiff was a mere outsider and Christensen was vice-president and general counsel of the American Bankers' Assurance Company. Moreover, all of defendant's officers knew the money in suit, though expended for the company by Christensen, was actually advanced by plaintiff and that the indebtedness on that account

was to plaintiff. It may be that Christensen was the agent of plaintiff at that time—that is, when the stock was issued—but, if so, such agency must be found from other facts in proof than those recited in the instruction and not rested merely on the proposition that he had received money from plaintiff for the benefit of the company and expended it thereabout in his own name. Neither is the mere fact that Christensen expended the money in his own name sufficient to render the debt one to him personally, so as to authorize the company to issue stock in his name to compensate it, especially when it is remembered that all concerned well knew the debt existed in favor of plaintiff.

While both plaintiff and Christensen testify pointedly to the effect that Christensen was not the agent of plaintiff to collect this debt from the American Bankers' Assurance Company or to receive stock therefor, there is much in the evidence from which the jury may infer, if it sees fit to do so, that Christensen was such agent at the time. It appears the two men were intimate friends and had been for some time and that plaintiff sent his several advances to Christensen to be used originally for the benefit of the company. Thereafter he persistently urged Christensen to cause the company, in which he was a dominant figure, to repay him. But defendant elicited and introduced correspondence between the parties which tends with great force to show that plaintiff was not willing to trust Christensen to receive payment of his claim through an issuance of stock to Christensen for him. Indeed, when Christensen wrote suggesting that he would take stock from the company and personally assume plaintiff's debt, plaintiff immediately replied that he would not consent to any "shifting" of the debt, but insisted on the company paying him, and all of this correspondence was had at a time when Christensen represented the company as its vice-president and general counsel. Obviously the question concerning

the authority of Christensen to represent plaintiff in causing the 507 shares of stock to be issued on account of plaintiff's debt to and in the name of Christensen is one for the jury on the evidence, and this is true, too, though it appears Christensen failed to account to plaintiff and afterwards converted the stock by selling it to others. If it be found that Christensen possessed authority from plaintiff with respect to that matter and that the stock was issued to Christensen for plaintiff and to compensate plaintiff, the debt in suit should be regarded as paid by that transaction. On the other hand, if Christensen possessed no such authority from plaintiff, the debt in suit continues to subsist as a valid and enforceable one, and the fact whether the stock was issued to him on his own account or on account of plaintiff's debt is wholly immaterial. These are the only issues of fact in the case, as we view it, for the reason all other questions are concluded by the law. Defendant's second instruction is as follows:

"The court instructs the jury that your verdict will be for the defendant unless you find and believe from the evidence that plaintiff advanced the money sued for to the American Bankers' Assurance Company of Missouri, and unless you so find, your verdict will be for the defendant, and you are instructed that the payments or advances to the witness Christensen, unless said advances were paid to the Missouri company with the knowledge of the company or its officers that they were made by plaintiff and so accepted are not and do not constitute payments to said company."

This instruction inheres with error, in that it is highly misleading, for it tells the jury the finding should be for defendant unless the money was advanced by plaintiff to the American Bankers' Assurance Company of Missouri, and that the payments to Christensen were of no avail unless they were paid to

the Missouri company with the knowledge of the company or its officers and so accepted. The instruction is vague and, when considered in connection with the admitted facts of the case, it tends to mislead. In the first place, the $150 first paid was admittedly not paid to the company but to Christensen before its organization and before it had any officers. In the second place it is immaterial whether any one of the advances paid by plaintiff was paid to the company with the knowledge of its officers at the time, in that it appears conclusively the company, on full information subsequently acquired, became obligated therefor by the ratification heretofore discussed. All of the evidence is to the effect that the money was paid to Christensen and used for the benefit of the company, and there is none that he paid the money to the company, while the instruction seems to suggest that, though the payments were made to Christensen for the company's benefit, they were without avail, ''unless said advances were paid to the Missouri company'' with the knowledge of its officers that they were paid by plaintiff and so accepted. In view of the fact that the company was fully advised by Christensen of these payments and that the money was used for its benefit and that it ratified and confirmed Christensen's act in the premises, the instruction is beside the case.

The third instruction, which, together with those discussed, includes all given on the part of defendant, is likewise an improper one and should not have been given. It is unnecessary to discuss it.

But it is argued, though it be that the amounts mentioned were advanced for the benefit of the American Bankers' Assurance Company, incorporated under the laws of Missouri, and that company subsequently ratified the acts of Christensen and became obligated to plaintiff on that account, no recovery may be had against the present defendant, the American Bankers' Assurance Company of Delaware. The facts

relevant to this argument are as follows: The prior company—that is, the original American Bankers' Assurance Company—was incorporated in Missouri October 1, 1909. Some time in July, 1910, the officers of the Missouri company, for reasons not disclosed by the record, desired to transfer the business of the Missouri company to, and continue the same in, a new corporation of the same name to be incorporated under the laws of the State of Delaware.. To this end, the officers of the Missouri company incorporated defendant, the American Bankers' Assurance Company of Delaware. These officers subscribed for the stock of the new corporation in Delaware to the amount of $100,000 in order to launch it under the laws of that State, but, as we understand it, the capital authorized under the incorporation of defendant company was the same as that authorized by the Missouri company.

In connection with this transaction, the officers prepared what is termed in the evidence as a declaration of trust and spread it upon the corporate records of the Delaware company, to the effect that they subscribed for and took the stock in the Delaware company in trust for the stockholders of the Missouri company. Thereupon all of the stockholders in the Missouri company were notified that, upon the surrender of their stock in the Missouri company, like stock in the Delaware corporation in the same amount and of the same value would be issued to them instead. About ninety per cent of the stockholders of the Missouri corporation accepted the proposal, surrendered their stock in the Missouri company, and took stock in the Delaware company in lieu of it. About ten per cent of the stockholders in the Missouri company declined to participate in the new company and, therefore, surrendered their stock in the Missouri corporation upon receiving their *pro rata* portion of the assets of the company, which was paid them therefrom. All of the officers of the Missouri company

became the officers and succeeded to the same offices in the Delaware company, and all of the assets of the Missouri company were merely taken over by the Delaware company, and the business continued precisely as before as if no change whatever had occurred. It is said the Delaware company proceeded to and did pay some of the debts of the Missouri company, but there was no express assumption on its part of the debts and liabilities of the Missouri corporation.

From these facts, it appears that this change of corporate entity amounted to no more than a physical moving of the Missouri corporation to the State of Delaware, if such were possible under the laws and the intangible character of corporate existence. However, it does not appear that the Missouri corporate entity was dissolved or ceased to exist, unless it be that the franchises granted to it became forfeited because of abandonment and non-user. But it is certain that the Missouri corporation was entirely denuded of its assets and that the Delaware corporation, having accumulated like franchises in that State to pursue the same calling, took them upon a mere exchange of stock with the stockholders in the prior company and upon payment of the *pro rata* part of the assets to the few stockholders who desired to retire. All of the defendants' officers who spoke on the subject at all refer to the matter as a merging of the Missouri company into the Delaware company or as a continuation of the business of the Missouri company through another of the same name organized in Delaware. There is no controversy about the facts as to what was done with respect to this matter or as to how it was done, for all of the witnesses describe it alike.

It is obvious that there was no sale here in the sense of that term by one corporation of its business to another. There was no transaction between the companies as entities, and nothing was paid or passed from the one to the other as such, though the stockhold-

ers in the old surrendered their stock and took stock in the new, and some of them took assets of the original company in return, while the new company merely appropriated the remaining assets of the original company by common consent of the stockholders in both. It may be that the proceeding amounted to a consolidation of the two companies into the defendant corporation, the American Bankers' Assurance Company of Delaware, but whether it did or not is unnecessary to inquire, for it appears to be clear enough on substantial grounds and conceded facts that defendant Delaware company is a mere continuation of the prior Missouri company of the same name.

Such manoeuvering, when sought to be invoked on the part of the successor to defeat the rights of creditors of the prior company, is regarded both in law and equity as constructively fraudulent and are ever so declared. This is true because to permit the new company, which amounts to no more than a continuation of the old, to denude the old or debtor company by thus taking over and enjoying all of its assets without answering for its debts and without giving any valid tangible consideration therefor, which may be looked to by the creditors of the old company, entails a fraud upon such creditors not tolerated in either jurisdiction. [See Hibernia Ins. Co. v. St. Louis, etc. Transp. Co., 13 Fed. 516; Berthold v. Holladay, etc. Co., 91 Mo. App. 233; Powell v. North Missouri R. Co., 42 Mo. 63.] The cases last cited deal with the principle in equity but the rule obtains alike at law when it appears as it does here that the new corporation is in substance nothing more than a continuation of the old one, for in such circumstances the assets and business of the prior company are not only taken over *cum onere* according to the principle in equity by the new corporation, but it—that is, the new legal entity —is treated in fact and in law as the same company continuing to exist as before. [See Coffey v. Nat'l

Bank, 46 Mo. 140; Eans v. Exchange Bank, 79 Mo. 182; Indianapolis, etc. R. Co. v. Jones, 29 Ind. 465; 5 Thompson, Corporations (2 Ed.), Secs. 6082, 6083. See, also Zachra v. American Mfg. Co., 179 Mo. App. 683, 162 S. W. 1077.] For an application of the same principle in so far as public corporations are concerned, see Thompson v. Abbott, 61 Mo. 176; Hughes v. School Dist., 72 Mo. 643; Winkleman v. Levee Dist., 171 Mo. App. 49, 153 S. W. 539. It is entirely clear that the defendant Delaware corporation is liable for the debts of its predecessor, the Missouri company of the same name, on the principle that the latter continues to exist in the form of the Delaware company, and this is true in law as well as in equity.

For the reasons above pointed out, the judgment should be reversed and the cause remanded to try the issue pertaining to the authority of Christensen to represent plaintiff in the matter of the stock transaction of date April 22, 1910. It is so ordered. *Reynolds, P. J.*, and *Allen, J.*, concur.