WILLIAM W. POWELL, Respondent, v. NORTH MISSOURI RAILROAD COMPANY, Appellant.

<table>
<tr><td>42</td><td>63</td></tr>
<tr><td>96</td><td>178</td></tr>
</table>

| 42 | 63, |
|----|----|
| 100a | 4465 |

1. *Railroad Companies — Consolidation.*—Where several railroad companies were, by virtue of the act of union, "merged in and constituted one body corporate," under the name of one of them, and all were continued in existence, it was treated as a consolidation.

2. *Railroad Companies — Amalgamation.* —An amalgamation implies such a consolidation as to reduce the companies to a common interest. But where, by the very terms of the statute and the deed, the first corporation was extinguished, and the second only continued to exist, the case is not one of mere consolidation or amalgamation.

3. *Corporation — Dissolution — Effects — Equity.* — Although, by the old common law, the dissolution of a corporation extinguished its debts, yet courts of equity, in such case, will consider the property and effects as a trust fund for the payment of creditors and for the shareholders, into whosesoever hands they may come.

4. *Corporation — Transfer — Creditors.* — A corporation cannot give away the effects belonging to it, to the prejudice of creditors. A court of equity will follow the trust fund into the hands of other than *bona fide* creditors and purchasers.

## *Appeal from St. Louis Circuit Court.*

This was an action brought by plaintiff to recover of defendant his salary as secretary of the Chariton and Randolph Railroad Company. Testimony was introduced showing the election and services of plaintiff as secretary of that company. The remaining facts pertinent to this cause appear in the opinion of the court.

*Hunton, Moss & Sherzer*, for appellants.

I. A sale by the Chariton and Randolph Railroad to defendant, under the act of Feb. 10, 1864 (Adj. Sess. Acts, 1863–4), in the absence of fraud, vests a complete title to all effects and assets sold and transferred in defendant. ( *Vide* act cited; compare act April 2, 1853, Sess. Laws of New York, chap. 76; Eaton & Hamilton R. R. Co. v. Hunt's estate, 20 Ind. 463; 25 Ill. 353; Dwar. on Stat. 588; compare Ill. Laws of 1861, p. 480.)

II. Without such act the corporation had a right to sell and the other to purchase, the effects and assets not being in the nature of a franchise, both at common law and by virtue of their charter powers; and such a sale, being *bona fide*, passes title. (Coke on Lit., Thom. ed., pp. 213–223; Hobart, 211, *a*; Com. Dig. Franchise, "F.;" Bac. Ab. tit. "Grant, A. B.," "Corporations, E.;" 1 Blackst. Com. 47, 5; 2 Kent's Com. 281; 1 Kyd's Corp. 69, 70–74; Grant on Corp. 98; 3 Rob. 513; Angell & Ames on Corp. pp. 100, 183, 185, §§ 110, 187, 191; Noyes and Commonwealth of Colchester v. Lowten, 1 Ves. & B. 226, 237, 240; Binney's case, 2 Bland, Md., Ch. 142; 3 Rand. 143; 20 Law R. 363; Redf. Rail., 2d ed., 575, 80; Redf. Rail., 3d ed., 514, 516, and notes, p. 523; Sess. Laws, 1851, p. 483; 7 Serg. & R. 320; 4 Johns. Ch. 370; R. C. Mo. 1855, p. 406; Cal. Min. and Manuf. Co. v. Clark, 32 Mo. 305; Adj. Sess. Acts, 1859, p. 414; Chambers v. City of St. Louis, 29 Mo. 576; Gen. Stat. 1865, 341; 1 Story on Cont. 533–589.)

*R. H. Musser*, for respondent.

I. The Legislature cannot be considered to have intended that this vast amount of property should have been transferred to defendant for so trivial a sum as one dollar, to the exclusion of the just claims of creditors.

II. If the Chariton and Randolph Railroad could not sell their property for a dollar and cut off all their creditors, they could not cut off a part of them by a limitation in favor of the grantee that only $25,000 of their debt should be paid.

III. The grantor and transferee seem, by their own acts, to have considered what they now claim to be a sale as an amalgamation. No trustees were appointed, nor receivers, against whom the plaintiff could have brought his action. Nothing was done after the transfer and acceptance except the fulfillment of the plain stipulations of the deed. If the parties had contemplated other than a transmigration of the corporate powers of the one company into the other, and a complete amalgamation of the one with the other, their acts, if guided by their duties, could not have other than provided for the winding up of the affairs of the grantor in the manner specified and demanded by the public statutes of the State. The act under which the amalgamation was effected cannot have contemplated a bargain and sale. If such had been its purpose, the words " surrender and transfer" would not have been used.

IV. The defendant, under that act, even if it did not amount to an amalgamation, would be a trustee by implication of these assets, and would, in any event, hold them for the benefit of the creditors of the defunct corporation. (Phila., Wil. & Balt. R.R. Co. v. Howard, 13 How. 307; Redf. Rail. 623 *et seq.;* 6 Rail. Cas. 136; Cham. & Pet. Rail. 582; Kean v. Johnson, 1 Stock. Ch. R. 405; 1 Port., Ind., 406.)

HOLMES, Judge, delivered the opinion of the court.

The petition is in the nature of a bill in equity, for an account of the assets of the Chariton and Randolph Railroad Company, in the hands of the defendant. It is alleged that this company, by an agreement with the defendant, and by virtue of the act of

the General Assembly, approved February 10, 1864, for the consideration of one dollar and of the covenants contained in the instruments of transfer, surrendered and transferred to the defendant their franchises and property, of the value of $200,000, and that it was agreed that, upon the acceptance of such transfer, the other corporation should cease to exist. There was no allegation of fraud, nor that the transfer was not made for a valuable consideration, nor that the defendant was not a *bona fide* purchaser, nor that there was any trust for the benefit of creditors.

A demurrer to the petition was overruled.

An answer was then filed denying the averments of the petition, as therein stated, and alleging that the defendant, under the act aforesaid, did, on the 14th day of May, 1864, purchase, for a valuable consideration and in good faith, from the said Chariton and Randolph Railroad Company, all their rights, privileges, franchises, and property, but assumed no liability to pay the debts of the company; and it denied the right of the plaintiff to maintain this action.

There was some evidence tending to show that the value of the property sold and conveyed was between fifty and a hundred thousand dollars. The deed of sale and transfer was expressed to be " in consideration of the premises and the agreements herein contained, and of the sum of one dollar." Among the covenants there was one for the payment of $25,000, for the liquidation of the debts of the company to that amount, and no more, and it was proved that this sum had been paid. Another covenant was to the effect that the defendant would issue certificates of stock in the " West Branch of the North Missouri Railroad Company," to the stockholders in the other corporation, to the amount of the actually paid up stock held by each one, upon a surrender of the old certificates for cancellation. It was further covenanted that the defendant would accept the transfer in pursuance of the act, and agree to undertake the construction of the West Branch Railroad, and proceed at once to the construction and completion thereof, as rapidly as the moneys to be raised by means of the bonds authorized, or from other sources, would enable them to do.

The court gave an instruction, which we may take as indicating the principles upon which the decision was grounded, to the effect that the act of the Legislature did not authorize a sale of the effects of the Chariton and Randolph Railroad Company, but merely an amalgamation and consolidation of the two roads, and that therefore the assets were subject, in the hands of the defendant, to the plaintiff's claim; and judgment was given for the plaintiff for the sum of $37.35, for which execution was awarded against the property, real and mixed, of the Chariton and Randolph Railroad Company, found in the hands of the defendant.

This corporation was authorized by the act to transfer and assign, by a vote of a majority in interest of the stockholders, all their effects and assets, rights and privileges, and all the work done in the construction of their road, to the North Missouri Railroad Company; and upon such transfer and acceptance the company was "to cease to have a corporate existence," and the road was thenceforth to be styled the "West Branch of the North Missouri Railroad;" their "franchises" were to become "completely vested in the North Missouri Railroad Company," but "the accounts and business of the West Branch" road were to be kept separate and distinct from those of the main line, so that one road should not become or be held liable for the debts of the other. (Adj. Sess. Acts, 1863, pp. 50, 57, § 12.)

The deed certainly transferred and conveyed everything that could be transferred or assigned under this act. This was not a mere amalgamation or consolidation of the two corporations into one. By the very terms of the statute and the deed, the first corporation was extinguished—the second only continued to exist. Where several railroad companies were, by virtue of the act of union, "merged in and constituted one body corporate," under the name of one of them, and all were continued in existence, it was treated as a consolidation. (Phila., Wil. & Balt. R.R. Co. v. Howard, 13 How. 333.) An amalgamation implies such a consolidation as to reduce the companies to a common interest. (2 Redf. Rail. 659.) Such was not the case here. One was absolutely extinguished, as was held in a similar case in Eaton

and Hamilton R.R. Co. v. Hunt, 20 Ind. 463 ; State v. Bailey, 16 Ind. 46.

As to what the effect was upon the corporate franchises, we need not inquire very minutely.  It may safely be said that such of them as were personal in their nature, and incapable of being transferred to another, were revoked or surrendered, and were extinguished.  There is no question here of the power of the Legislature to pass this act, nor of the power of this corporation to do this thing with the consent of all the stockholders, and, for all the purposes of this case, such consent may be presumed.  As to the other corporation, whether any franchises were transferred or not, the act conferred upon that company all the additional franchises and powers that were necessary to enable them to accept this transfer and build the West Branch of the North Missouri Railroad.  The provision in relation to the keeping of the accounts and business of the branch and the main line separate and distinct, appears to refer to the future operations of the North Missouri Railroad Company, and to the rights and interests of the stockholders therein.  This corporation is to be considered as having power to construct a main line and a branch, with two classes of stockholders, in respect of their interest in the corporation.  The act of February 16, 1865, to provide for the completion of the North Missouri Railroad and its West Branch, proceeds upon this idea in reference to the application of the funds to be raised by the first mortgage bonds, and may be taken in some measure as a legislative construction of the nature and constitution of this corporation. (Laws of 1865, p. 90.)  Whatever it may be, we need go no further now than to say that there is no consolidation of these two corporations into one under the name of the other.

The Chariton and Randolph Railroad Company was not compelled to make this transfer.  It was a matter of contract, and it is clear that the conveyance was made upon a valuable consideration, and to a *bona fide* purchaser.  It was authorized by law, and it was effectual to convey the property. (Bruffet v. Great West. Railw. Co., 25 Ills. 356.)  By the old common law, it seems, a dissolution of the corporation extinguished the debts ; but courts of equity in such case will consider the property and effects

as a trust fund for the payment of creditors and for the share-holders, into whosesoever hands they may come, subject to such a trust. (Ang. Corp. § 779, *a*.) A corporation cannot give away the effects belonging to it, to the prejudice of creditors. (Goodwin v. McGee, 15 Ala. 232; 2 Redf. Rail. 624.) A court of equity will follow the trust fund into the hands of other than *bona fide* creditors and purchasers. (Curran v. Arkansas, 15 How. 307; Bacon v. Robertson, 18 How. 480; Hightower v. Thornton, 8 Ga. 503.) There was no averment and no proof that this defendant held this property otherwise than as a *bona fide* purchaser for a valuable consideration. The judgment of the court below did not proceed upon any equity of this nature, upon the theory that the debtor corporation still existed under the corporate name of the defendant, and that the property which had belonged to it was subject to this demand in this suit. According to the view we have taken of the case, this proceeding was entirely erroneous.

Judgment reversed and the petition dismissed. The other judges concur.