### AMERICAN BANK NOTE CO. v. BLUE RIDGE ELECTRIC CO.

(District Court, N. D. Georgia.    March 9, 1916.)

#### No. 13.

CORPORATIONS ⟨=⟩579(2)—REORGANIZATION—RIGHTS OF CREDITORS.

Where plaintiff, a creditor of the N. Co., acquiesced in and agreed to become a party to a plan of reorganization and was told that its claim would be taken care of in the reorganization by the persons who largely controlled the organization of the B. Co. for the purpose of taking care of the secured and unsecured debts of the N. Co., and in the reorganization stockholders and other creditors were provided for or paid in bonds of the B. Co. or otherwise, and the property of the N. Co. which would have been liable for plaintiff's debt had passed into the hands of the reorganized company without plaintiff's debt being taken care of, the B. Co., which was a party to the plan by which such properties were acquired, *held* liable to plaintiff for an amount equal to the value of bonds to the amount of plaintiff's claim, as of the date when bonds were delivered to other creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309, 2313, 2316;  Dec. Dig. ⟨=⟩579(2).]

In Equity.    Suit by the American Bank Note Company against the Blue Ridge Electric Company.    Decree for plaintiff.

H. A. Alexander, of Atlanta, Ga., for plaintiff.

H. H. Dean, of Gainesville, Ga., and Robert C. & Philip H. Alston, of Atlanta, Ga., for defendant.

NEWMAN, District Judge.    Since the argument of this case, and since the briefs were furnished me by the counsel respectively, I have endeavored to find an opportunity to go through this record.    I have recently been  able to do so, and have gone very carefully through the evidence, books, documents, and oral testimony.

On January 3, 1914, I made a brief opinion in this case on the questions then arising, and I stated then that:

"This examination has satisfied me that the complainant states a case against the Blue Ridge Electric Company, and my conclusion is that the case against the Blue Ridge Electric Company is for an original undertaking on its part, considering all the allegations of the bill and the amendments.

"It was the people who finally organized the Blue Ridge Electric Company who had made the agreement with the American Bank Note Company to take care of it in the reorganization of the North Georgia Electric Company.    The debt, of course, was due by the North Georgia Electric Company, and while there was a change in the name and a change in the corporate organization, sub-

stantially and really, going behind the corporate organization and the corporate name were the same people and the same properties. The Etowah Power Company was in it, it is true, but the main property was the property of the North Georgia Electric Company, which made the contract and which owed the plaintiff the debt.

"Under the allegations of the bill, the Blue Ridge Electric Company was mainly organized for the purpose of taking care of the secured and unsecured debts of the North Georgia Electric Company and thereby getting a clean transfer of the North Georgia Electric Company's property, through the Blue Ridge Electric Company, into the Georgia Power Company. Everybody connected with the reorganization, so far as this record shows, were the people upon whom the American Bank Note Company, according to its allegations, had a right to rely for the protection of its debt, and the bonds issued by the Blue Ridge Electric Company were based largely on the North Georgia Electric Company's property, which was certainly responsible to the plaintiff for its debt.

"The payment of the stockholders of the North Georgia Electric Company out of the securities issued by the Blue Ridge Electric Company in preference to the creditors of the company was, of course, illegal as against the creditors. A corporation cannot effect a reorganization by obtaining a new corporate name, issuing bonds and stocks on the old corporate property, and taking the same for the benefit of the old stockholders in preference to the creditors of the old corporation. That this is true will not be questioned, probably, by any one. The allegation of the bill is that that was done in this case."

I then proceeded to state an allegation of the bill which was not supported by the evidence in the case. It was this:

"If the allegations of the bill are true, there are still bonds of the Blue Ridge Electric Company in the hands of the Knickerbocker Trust Company, the trustee therein, subject to the direction and order of the Blue Ridge Electric Company, and which it states it was its right to have and which it is now willing to accept."

The proof did not show this allegation to be correct, that there was still bonds of the Blue Ridge Electric Company, at the time named, in the hands of the Knickerbocker Trust Company, so that that ground of right to recover was abandoned.

The opinion then proceeds:

"The record shows that C. Elmer Smith and E. L. Ashley controlled largely in the organization of the Blue Ridge Electric Company, and that Smith, and probably Ashley, and also Carlisle, president of the North Georgia Electric Company, had given the complainant company, through their statements in writing, reason to rely upon having its debt provided for and taken care of through the reorganization plan.

"I think as against the Blue Ridge Electric Company the plaintiff has stated in its pleadings a cause of action on which it is entitled to recover, if the case made by the pleadings shall be properly proven."

The correspondence spoken of above is as follows:

"August 24, 1909.

"W. A. Carlisle, Esq., President, North Georgia Electric Company, Gainesville, Ga.—Dear Sir: What has become of our claim against your company? If you will be good enough to advise us the present condition of affairs, and when we may expect a settlement of the account it will be very much appreciated. You will recall that it was about a year ago that we signed your agreement.

"Yours very truly, C. L. Lee, Treasurer."

"September 1, 1909.

"C. L. Lee, Esq., Treas., 70 Broad Street, New York City—Dear Sir: Yours of August 24th at hand.

"We hope that this fall or early winter the option, held on our properties by the parties with whom we are dealing and in whose behalf the agreement signed was obtained, will be taken up and your account provided for.

"They have been putting money into a transmission line about Atlanta and are adding to the income of the company by the sale of power there where a number of good power contracts have already been made and others are pending. You have been patient for a long time and we hope can bear with the situation a little longer, as we have assurances that the option will be taken up and our creditors claims cared for.

"Respectfully,                                               · W. A. Carlisle."

"September 23, 1909.

"C. Elmer Smith, Esq., York, Pa.—Dear Sir: Re North Georgia Electric Company. In June, 1908, we signed an agreement to accept certain securities in settlement of our claim against the above company. We are now informed that you have taken other steps toward reorganization, and that you have had drawn up a new agreement more favorable to the creditors than the first.

"We will be glad to have you send us a copy of any proposed agreement and at the same time let us have the benefit of your opinion regarding the probable outcome of our claim.

"Yours very truly,                                    · C. L. Lee, Treasurer."

"October 1, 1909.

"C. Elmer Smith, Esq., York, Pennsylvania—Dear Sir: Re North Georgia Electric Company. Some time ago we wrote you regarding a form of agreement which we understand you have issued in connection with the above company. Thinking possibly this letter may not have reached you we beg to request that you let us have a copy of any agreement, as you will recall we are creditors of this company.

"Yours very truly,                                    C. L. Lee, Treasurer."

"York, Pa., October 2, 1909.

"American Bank Note Co., New York, N. Y.—Gentlemen: In answer to your letter of the 1st would state, that the affairs of the North Georgia Electric Co., have not yet been straightened out, but I expect that they will be between now and the 1st of January. A reorganization is being effected and your affairs will be taken care of with the balance of the creditors.

"Your recent letter was turned over to Mr. Ashley, my attorney for attention.

"Yours truly,                                           C. Elmer Smith."

This makes a strong basis for the plaintiff's claim of having been wrongfully treated, because Smith and Ashley were undoubtedly the main persons connected with the organization of the Blue Ridge Electric Company, and, indeed, of the two other companies involved here, the Atlanta Power Company and the Georgia Power Company.

The main ground upon which the plaintiff is entitled to recover a decree in its favor in this case is this: That it had a debt against the North Georgia Electric Company, that a reorganization of that company was effected in which the stockholders received a large amount for their stock, and the properties of the North Georgia Electric Company, which would have been liable for the plaintiff's debt, went into the hands of the reorganized company without its debt being taken care of. As a matter of fact, the evidence shows, without passing, for the moment, on who did it, that all the properties of the North Georgia Electric Company did go into the hands of a new company, which might, I think, be properly called a reorganized company, and that the stockholders of the North Georgia Electric Company were paid or properly secured, and in the same transaction all the debts, both secured and unsecured, of the North Georgia Electric Company, were paid except this debt of the American Bank Note Company. Why it was left out it is impossible to say. There is no reason for it given in the evidence. There is some slight effort to show that the

North Georgia Electric Company did not owe the debt, but the evidence is overwhelmingly to the contrary, and that certain blank bonds were printed for it by the American Bank Note Company and delivered to it. All of the testimony is to this effect.

It may be taken as a fact, I think, for the purpose of determining this case, that the North Georgia Electric Company, at the time of this transaction, owed the American Bank Note Company the amount claimed by it. It is also true that the American Bank Note Company was led to believe, especially by C. Elmer Smith, that its debt would be taken care of in the reorganization then contemplated and to some extent progressing. C. Elmer Smith, with the assistance of Eugene L. Ashley, was the main support, controlling and dominating this entire reorganization movement.

The main question we come down to in this case, for the purpose of trying to determine it correctly, is whether the Blue Ridge Electric Company was really a party participating in the transaction by which the properties of the North Georgia Electric Company were acquired and the stockholders paid for their equity in the same. It is perfectly clear to me that the American Bank Note Company has rights against somebody, either natural persons or corporations.

It seems that at one time in the course of the transactions it was contemplated that the Blue Ridge Electric Company should take care of the secured and unsecured debts of the North Georgia Electric Company, but that subsequently, by a number of changes in plans, the payments were really made to these stockholders and creditors of various kinds of the North Georgia Electric Company by the Atlanta Power Company. The testimony of Mr. Arthur A. G. Luders is as follows:

"Mr. Luders, please state what, if any, connection you had with the exchange of stock of the Georgia Power Company for stock in the North Georgia Electric Company and the Etowah Power Company? A. I personally delivered to the subscribers to a certain agreement dated June 3, 1909, which agreement was made between certain stockholders of the North Georgia Electric Company and the Etowah Power Company and the Georgia Power Company, the stock of the Georgia Power Company, which, under the terms of that agreement, they agreed to take in exchange for their stock in the North Georgia Electric Company and the Etowah Power Company.

"Q. What were the respective proportions of stock? A. The stockholders in the North Georgia Electric Company received 25 per cent. in stock of the Georgia Power Company, and the holders of the Etowah Power Company stock received 10 per cent. of their holdings of such stock in the stock of the Georgia Power Company.

"Q. You personally attended to that? A. I personally delivered or mailed the stock of the Georgia Power Company to the stockholders of the North Georgia Electric Company, and received in exchange from them either their stock, or an order for their stock, which they had previously deposited with the Carnegie Trust Company of New York, in pursuance of said agreement.

"Q. Please state how the stock of the Georgia Power Company came to be in your personal possession? A. It was delivered to me by E. L. Ashley, vice president of the Atlanta Power Company.

"Q. He instructed you what to do with it? A. He did.

"Q. And his instructions were to make these exchanges, as stated? A. His instructions were to make the exchanges as stated, and, when exchange was made, to report it so made to him.

"Q. I hand you one of the original contracts of June 3, 1909. Please examine it, Mr. Luders, and state whether or not the persons whose names appear in that contract received stock of the Georgia Power Company in the proportion stated? A. All of the persons whose names appear as subscribers to this agreement received stock in the proportion stated.  *  *  *

"Q. Mr. Luders, will you please state what part, if any, you played in the exchange of the bonds of the North Georgia Electric Company and the Etowah Power Company and with the unsecured accounts? A. There were certain subscribers to the agreement of June 3, 1909, who held bonds of the North Georgia Electric Company, refunding bonds, of the refunding issue, and certain of them who held notes or claims against the North Georgia Electric Company, which in certain cases these notes or claims had been assigned to the Atlanta Power Company and deposited, under the terms of the June 3d agreement, with the Carnegie Trust Company of New York. In pursuance of the agreement which the Atlanta Power Company made with the subscribers to that agreement, bonds of the Blue Ridge Electric Company were delivered to those subscribers to that agreement who held these unsecured claims, and I either received an assignment of their claims or an order on the Carnegie Trust Company for the assignment of it.

"Q. They were also exchanged for the old bonds? A. In certain cases. In some cases the old bonds were purchased outright by S. Fahs Smith.

"Q. Well, after he got the old bonds by purchase, didn't he make the exchange for the Blue Ridge Electric bonds? A. Yes. I can't— yes, I can too. He received in some cases the bonds of the Blue Ridge Electric Company direct from the trustee of the Blue Ridge Electric issue.

"Q. I show you, Mr. Luders, in the part of the June 3d agreement, Schedule A, the sundry unsecured notes and sundry open accounts. Please state whether or not those persons received Blue Ridge Electric bonds. A. This list of sundry unsecured notes shows certain persons, all of whom, with the exception of D. M. Stewart, received Blue Ridge Electric Company bonds at par in exchange for their unsecured notes, and accrued interest. The list of sundry open accounts shows certain persons of whom the following received Blue Ridge Electric Company bonds in exchange for their open accounts: W. A. Carlisle, Jno. A. Roebling Sons Company, General Electric Company, C. M. Merrick, E. P. Curby, Elwood Allen, E. S. Greenleaf, W. S. Huntley, W. H. Slack, W. R. Pomeraine, and F. E. Pomeraine, and of the sundry open accounts of the Etowah Power Company."

In connection with the letter written by C. Elmer Smith to the American Bank Note Company, in which he informed them that their claim would be taken care of in the reorganization and mentioned the fact that he had turned the matter over to Mr. Ashley, his attorney, for attention, this being Mr. Eugene L. Ashley, it is important to note that the officers of these various corporations during the period of these transactions were as follows:

Atlanta Power Company: C. Elmer Smith, president; and Eugene L. Ashley, vice president.

Georgia Power Company: C. Elmer Smith, president; and Forrest Adair, vice president until June, 1911, when he was succeeded by one A. W. McLimont.

Blue Ridge Electric Company: S. Fahs Smith, president until December 22, 1910, when he was succeeded by Augele L. Ashley; and W. A. Carlisle, vice president.

And the further fact that C. Elmer Smith and Mrs. Ashley, wife of Eugene L. Ashley, owned all of the stock, except a few qualifying shares for directors, of the Atlanta Power Company, and the Atlanta Power Company subscribed for the stock of the Georgia Power Company.

Also, that S. Fahs Smith, who bought in the properties of the North Georgia Electric Company in question here, was the brother of C. Elmer Smith, and, so far as it appears here, had no interest personally in the matter, but was simply acting on behalf of his brother and others in the acquisition of these properties.

It is difficult to understand, and more difficult to explain, the relation of these different corporations to the transactions by which they obtained the title to and possession of these properties of the North Georgia Electric Company, but certain things coming out of this mass of testimony and maze of facts and transactions are clear. First, it is perfectly clear from the evidence here, and from the recognition of the parties engaged in these reorganization plans, that the debt of the North Georgia Electric Company to the American Bank Note Company was a debt justly due and to which there was no real defense. Second, it is also satisfactorily shown that all of the properties of the North Georgia Electric Company were acquired by paying to the stockholders of that company what they regarded as sufficient consideration for their stock; also, that all the debts, secured and unsecured, of the North Georgia Electric Company, were provided for and paid in one way or another, sometimes in bonds of the new company and sometimes in cash, except this debt to the American Bank Note Company. Why it was not paid, and why the parties engaged in this reorganization have declined to pay it, is wholly unexplained. Third, it is satisfactorily shown, in my opinion, that the Blue Ridge Electric Company was a party to all this plan by which these properties were acquired, and whoever else may be liable to the American Bank Note Company, it clearly is to this extent at least: It was entitled to receive, as other unsecured creditors did, the bonds of the Blue Ridge Electric Company, dollar for dollar, for its debt and interest. One of the main equities of the American Bank Note Company is the fact that it acquiesced in and agreed to become a party to these plans of reorganization conceived and carried through by C. Elmer Smith and Eugene L. Ashley, and these plans, as shown by the evidence, resulted in the payment of the accounts of other unsecured creditors in the bonds of the Blue Ridge Electric Company.

I think the plaintiff is entitled to a money decree for the value of those bonds at the time they were turned over for other debts to the other creditors of the North Georgia Electric Company. The evidence here does not show what that was. When the value of these bonds at the time they were turned over to the other creditors is established, the plaintiff will be entitled to a money decree for the amount of the value of the same. That is, taking its debt and interest up to that time, it will be entitled to the amount of the debt so ascertained in bonds, and will be entitled to a money decree for the value of that amount of bonds at that time, with interest on such amount from that time.

The effect of a consolidation, merger, or absorption of a corporation on its unsecured liabilities will be found in a note to the case of Atlantic & B. R. Co. v. Johnson, from the Supreme Court of Georgia, 11 L. R. A. (N. S.) 119.

I leave out of the question entirely the matter of the proof of this claim in the equity proceeding under which the property of the North Georgia Electric Company was sold, because of the company's repudiation of the same and of the apparent acceptance by the defendant of such repudiation. Both parties seem to acquiesce in treating the case without reference to this, and I have so considered it.

When evidence is produced to show the amount for which the plaintiff is entitled to a money decree under the above statement, the same may be entered.