## COLLINSVILLE NAT. BANK v. ESAU et al.

No. 9058—Opinion Filed Sept. 17, 1918.

Rehearing Denied Dec. 11, 1918.

(176 Pac. 514.)

**1. Corporations—Organization of New Corporation—Merger or Sale.**

Where the officers of an existing corporation organize a new corporation, and stock in the new corporation is exchanged for stock in the old without the payment of any other consideration therefor, and the officers of the old become the officers of the new corporation, which continues to transact business at the same place as the old, and the new acquires all the property and assets of the old corporation, held, that such transaction does not amount to a sale, but a merge of the two corporations.

**2. Same—Merger—Liability of New Corporation.**

Where there is a merger of two or more corporations, one of which continues the transaction of business, and all the constituent corporations cease the transaction of business, a creditor of the corporation becoming functus officio may enforce his claim against the corporation acquiring its property and assets to the extent of property and assets thus acquired.

(Syllabus by Springer, C.)

Error from District Court, Rogers County; W. J. Campbell, Judge.

Action by A. A. Esau against the Farmers' & Merchants' Bank and the Collinsville National Bank. Judgment for plaintiff, and the Collinsville National Bank brings error. Affirmed.

Adams & Wills, for plaintiff in error.

Goldesberry & Boone and H. Jennings, for defendant in error Esau.

Opinion by SPRINGER, C. The parties will be referred to according to the relative positions they occupied in the lower court.

It is substantially alleged in the petition that on the 29th day of July, 1910, the defendant the Farmers' & Merchants' Bank was a banking corporation transacting business at Collinsville, Okla. On that day the plaintiff deposited with the Farmers' & Merchants' Bank the sum of $2,000 to be held in escrow with some contracts for the purchase of real estate entered into between the plaintiff and one James D. Ward.

The money was deposited with the said bank as evidence of good faith and was to have been forfeited only by a failure on the part of the plaintiff to carry out his contract with Ward. Before the limitation fixed in

the escrow contract for the performance of the terms and conditions thereof, the plaintiff settled with Ward and paid him the entire purchase price of all the land bought by plaintiff. After the plaintiff settled with Ward, he went to the bank and demanded the money thus deposited, and it refused payment.

On the 14th day of October, 1912, the officers and stockholders of the Farmers' & Merchants' Bank organized the Collinsville National Bank, and on the 26th day of the same month and year the two banks merged, and the Collinsville National Bank succeeded to the franchise and acquired all of the property and assets of every kind and nature whatsoever of the Farmers' & Merchants' Bank, and the officers of the old bank became officers of the new bank, and the new bank continued to transact business in the same building where the old bank transacted business, and that such merger and transfer was in fraud of the rights of the plaintiff. It asks judgment for the sum of $2,000, the amount so deposited.

For answer to the petition, the Collinsville National Bank files a general denial and pleads a purchase by the Collinsville National Bank of the property and assets of the Farmers' & Merchants' Bank.

The issues thus joined present but a single question to be determined by this court, and that question is whether there was a sale by the Farmers' & Merchants' Bank of all its property and assets to the Collinsville National Bank.

Judgment in the lower court was for the plaintiff.

The defendant the Collinsville National Bank relies upon two cases by this court to which we are referred in its brief, the first of which is Overstreet v. Citizens' Bank, 12 Okla. 383, 72 Pac. 379. The facts in that case are, substantially: That in the month of January, 1896, the Farmers' & Merchants' Bank and the Citizens' Bank, each of which were banking corporations organized under the laws of the territory, were doing business in the town of Norman, Cleveland county, state of Oklahoma. The banking business was not sufficiently profitable for the support of two banks, and, after a conference of the officers and directors of the two banks, it was agreed that the Farmers' & Merchants' Bank would retire from business if arrangements were made for the payment of its depositors. It had on deposit something over $15,000, and, in order to meet the liability thus created, the Farmers' & Merchants' Bank deposited in the Citizens' Bank about $6,000 in cash, and executed its

note to the Citizens' Bank for the sum of $9,037.90 at 7 per cent. interest. The proceeds of this note, together with $6,000 in cash, were placed to the credit of the Farmers' & Merchants' Bank upon the books of the Citizens' Bank. The deposits in the Farmers' & Merchants' Bank were then transferred to the books of the citizens' bank, and the latter bank paid all these depositors from the deposit held by it to the credit of the Farmers' & Merchants' Bank. At the time of the execution of the note by the Farmers' & Merchants' Bank, it transferred to the Citizens' Bank as collateral security as payment of the note, promissory notes, and other credits to the amount of $15,000 to $20,000, the actual value of which was considerably less. At the time of the trial, less than one-half of the collaterals had been collected, and there was still a balance due upon the principal note executed by the Farmers' & Merchants' Bank to the Citizens' Bank.

The principal question disposed of by this case is that no fraud entered into the transfer of the property and assets of the Farmers' & Merchants' Bank to the Citizens' Bank.

The next case to which our attention is called is that of Ezzard v. State National Bank, 57 Okla. 371, 157 Pac. 127, and the facts in that case are substantially that the State National Bank was a banking corporation, and that prior to May, 1911, the Oklahoma State National Bank was a banking corporation, and that it guaranteed the payment of $2,000 loaned by Mollie Ezzard to I. M. Holcomb. After entering into the guaranty for the payment of the sum of $2,000 loaned by Ezzard to Holcomb, the Oklahoma City National Bank bodily sold all of its property and assets to the Citizens' Bank.

The principal question determined by the last-cited case is the right of one corporation to sell all of its property and assets to another corporation without the purchasing corporation becoming liable for the debts and obligations of the selling corporation, so long as the transaction is bona fide. While the reported cases by this court hold that one corporation may in good faith sell all of its property and assets to another corporation without the latter becoming liable for the debts and obligations of the former in the absence of an express agreement to that effect, nevertheless there is a line of cases which hold to the contrary; a distinction with reference to transactions of this character existing between corporations and a natural person. A natural person may sell all

his property for a consideration if the transaction is bona fide, and the buyer will not be required to take care that the seller provides for and pays all his debts. A corporation, unlike a natural person, by disposing of all its property, may not only deprive itself of the means of paying its debt, but may deprive itself of corporate existence and place itself beyond the reach of the process of law. There seems to be a great confusion in the reported cases, due, we believe, to a failure to distinguish between a sale, conversion, consolidation, and merger. A "sale" is accomplished by a meeting of the minds upon a common understanding of the contracting parties, the payment or its equivalent of the consideration, accompanied by a delivery of the property. In that case the seller would own the consideration paid, and the buyer would own the property which previously belonged to the seller. A "conversion" is accomplished by exerting dominion wrongfully over property in denial of the rights of the owner or inconsistent with it. A "consolidation" takes place where two or more existing corporations are united into a single corporation, and the existence of the uniting corporation is terminated, and the organization succeeds in a general way to the franchise and acquires the property and assets and assumes the debts and obligations of the constituent companies.

In ordinary legal phraseology, the term "consolidation" is generally used to indicate the act and result of uniting two or more corporations into one under a new name. A "merger" takes place where one of the constituent corporations remains in existence absorbing or merging in itself all the other companies. In a merger of two or more companies, one of the merging corporations continues to survive and succeeds to the franchise and acquires the property and assets of the other constituent corporations; that is, the merger consists from the uniting of two or more corporations by the transfer of the property to some one of the existing corporations, which continues its existence while the others are swallowed up or consumed by the one that survives. It differs from a "consolidation," wherein all the corporations cease to exist and unite in the interest of a new one. Rightly understood, there never can be a consolidation of corporations except where the constituent corporations cease to exist as separate entities, and a new corporation with the property and assets of the old one comes into being. Thus it will be seen that a "merger" is not the equivalent of a "consolidation" at all. Whether a particular transaction is in reality a sale, conversion, consolidation, or

merger, to a great extent depends on the circumstances surrounding each particular case.

In the case of C., S. F. & Cal. Ry. Co. v. Ashling, 160 Ill. 373, 43 N. E. 373, it is held that, where one corporation takes over all of the property and assets and succeeds to the franchise of another corporation and issues stock in the new corporation to the stockholders of the old corporation in exchange for an equal amount held by them in the old company, and the officers of the old corporation are made officers in the new, it amounted to a consolidation of the two entities. While we do not agree with the Illinois court that such transaction amounted to a consolidation, nevertheless we do believe it was a merger, and the same conclusion and result must follow as to the rights of creditors of the old corporation to assert their claims against the new organization. Another element entering into a proper understanding of the question under consideration is the determination of whether a particular transaction is in effect a merger or reorganization or succession, and a continuation of the old business under a new name.

It is held in a long line of authorities that, where a new corporation is organized by the officers and stockholders of an existing corporation who are retained as officers of the new corporation, where the stock in the new corporation is exchanged for stock in the old corporation, where the new corporation succeeds to the franchise and acquires the property and assets of the old corporation, and the new corporation continues to do business at the same place as the old corporation, under such circumstances the new corporation was not a purchaser of the assets and property of the old corporation, but that such acts amounted simply to a reorganization and a continuation of the old business under a new name, and consequently the new organization becomes responsible for the debts and obligations of the old corporation. Montgomery-Web Co. v. Dienelt, 133 Pa. 585, 19 Atl. 428, 19 Am. St. Rep. 665; Hibernia Ins. Co. v. St. L. & N. O. Trans. Co. (C. C.) 13 Fed. 516; Camden Interstate R. R. Co. v. Lee, 84 S. W. 332, 27 Ky. Law Rep. 75, and cases therein cited.

It is often difficult to say whether a particular transaction amounts to a merger or a reorganization and succession; but, in either event, an action by a creditor of a corporation becoming functus officio is maintainable against the new organization.

The facts in the instant case show that the Collinsville National Bank was organized October 14, 1912, by the officers and

stockholders of the Farmers' & Merchants' Bank, who also became officers and stockholders in the new bank by virtue of their stock in the old bank without the payment of any other consideration therefor.

On the 26th day of October, 1912, at a meeting of all the stockholders of the Farmers' & Mrchants' Bank, the following resolution was passed:

"Special meeting of the stockholders held October 26, 1912. At a meeting of the stockholders held this October 26, 1912 the meeting being called in accordance with the by-laws of said bank, all the stockholders being present, it was unanimously voted to liquidate the Farmers' & Merchants' Bank and succeed it by the Collinsville National Bank of Collinsville, Oklahoma, and that the directors proceed to do it."

The new bank succeeded to the franchise and business of the old bank and acquired all of its property and assets of every kind and nature, except perhaps a few notes and accounts. All the deposits and bills receivable and all of the furniture, and even the building where the old bank was located, became the deposits and property of the new bank, and it continued the transaction of business in the same place. It is argued that so long as they acted in good faith the new bank had a right to buy, and the old bank had a right to sell, its property and asset, even to the extent of preferring creditors, the same as an individual.

Under the authorities above cited, this contention may be regarded as admitted. But did this transaction amount to a sale? The Farmers' & Merchants' Bank was capitalized for $25,000. It owned furniture to the amount of approximately $6,000. It owned the building where it transacted business worth $8,000. It owned a large amount in notes and bills receivable and other securities. By this transaction the Farmers' & Merchants' Bank was left without property, corporate rights, or franchise of any kind, and without stockholders, and without means being provided for the payment of its debts and obligations. If the transaction amounted to a sale, the Farmers' & Merchants' Bank would own the consideration of all its property.

The record discloses that on the trial of the case the president and cashier both testified that the Farmers' & Merchants' Bank was insolvent and had ceased to do business. But the argument of the defendant, if appropriate, is fatal to the Collinsville National Bank. We are confronted with this predicament: The owners of the stock of the old bank are, with the exception of two,

owners of the stock of the new bank. Admitting that a corporation can sell its property the same and to the same extent as an individual, he cannot sell it to his agent or some one else who merely represents him and defeat his creditors, when in reality he still owns the property. The obligation is not denied; it is not denied that it arose when the Farmers' & Merchants' Bank was transacting business before the Collinsville National Bank came into existence; it is not denied that the same parties managed the Collinsville National Bank who managed the Farmers' & Merchants' Bank. Now, is the Collinsville National Bank so completely a new and different person from the Farmers' & Merchants' Bank that the law must close its eyes to the fact that the difference consists only in a change of name? The law makes no compulsion to such legal blindness and has no toleration for such legal absurdity.

Can parties managing a corporation contract debts and obligations in its name, then by some legerdemain of high financing denude the corporation of all its property and assets by transferring them to a new corporation which the same parties manage, and thereby render it powerless to pay under the mere guise of a sale? Under such circumstances, A. controlled the corporation, the corporation owed the debt; but by the transfer A. still controls the corporation, but the corporation owes no debts, therefore A. owes nothing. The law has no toleration for such jugglery. It is a fraud both in fact and in law.

A case very similar to the one under consideraion is Hibernia Ins. Co. v. St. Louis Trans. Co. (C. C.) 13 Fed. 516, and in that case the Circuit Court of the United States reaches a similar conclusion:

"This court holds," says McCrary, C. J., "that the sale by the baggage company of all its property to another corporation, composed mostly, if not wholly, of the same persons, was fraudulent and void as to all creditors of the former company, not assenting thereto. * * * The fair inference from the transaction is that the old company was about to be dissolved, and to cease to be. It was to be absorbed by the new company. This is the inevitable consequence of the formation of the new company, composed substantially of the same persons, to transact the same business, at the same places, and with the same property. By the transfer, the creditors of the old company were deprived of the means of enforcing their claims. * * * Equity will not compel the creditor of a corporation to waive his right to enforce his claim against the visible and tangible property of the corporation, and to run the

chances of following and recovering the value of shares of stock after they are placed upon the market."

And Treat, D. J., added:

"A corporation * * * cannot change its name or assume the form of a new corporation, and thus escape its obligations."

The court drew a distinction between an individual and a corporation, as to parting with all its assets even for the payment of bona fide debts, and not only held the transfer void even irrespective of the identity of the stockholders but held the new corporation liable to the creditors of the old to the extent of the assets so received. It is not necessary for us to go so far. We only hold that, under the circumstances, specific property of the old corporation may be followed, as in other cases of transfers fraudulent as to creditors.

It is said in appellee's argument that the whole of the property of the Aronia Company was not sold. But in fact the portion left was not enough to pay the landlord's preferred claim for rent; and, as to this creditor, the transfer was of all the available assets, and left him nothing within reach for payment of his claim. See, also, to same effect Montgomery-Web Co. v. Dienelt, 133 Pa. 585, 19 Atl. 428 19 Am. St. Rep. 667.

In Thompson v. Abbott, 61 Mo. 176, it was held that municipal corporation was liable for an obligation for a teacher's salary previously incurred by a township subdistrict which had been merged into such municipal corporation for school purposes; the court saying:

"Where one corporation goes entirely out of existence by being annexed to or merged in another corporation, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property, and be answerable for all the liabilities."

In Couse v. Columbia Powder Mfg. Co. (N. J. Ch.) 33 Atl. 207, it was held that where one corporation transferred its entire property to another the only consideration paid being the issuance of stock to trustees to be exchanged for the stock of the selling corporation, the purchasing corporation was not a purchaser in good faith, so far as the creditors of the selling corporation were concerned, but must as to them be considered a fraudulent grantee, although the purchasing company also agreed, as part of the consideration to save the selling company harmless from all indebtedness of every kind.

In Camden Interstate R. Co. v. Lee, 84 S. W. 332, 27 Ky. Law Rep. 75, it was held that, where a street railway company was absorbed by another company by means of an exchange of stock and the transfer of the assets of the street railway company, the absorbing corporation was liable in equity for the payment of judgments for torts recovered against the absorbed company, and that it was no defense that the absorbed company was insolvent; the court saying:

"While there was no stipulation in the deed that the new company should answer for the liabilities of the old, the law will not allow the stockholders in a corporation thus to change the name in which their property is held, and defeat the claims of creditors. The rule is that where one corporation goes entirely out of existence, by being merged into another, the liabilities of the old corporation are enforceable against the new one, just as if no change had been made."

In Powell v. North Mo. R. Co., 42 Mo. 63, it was held that where one corporation was merged in another by a transfer of its property and franchises in consideration of a covenant to pay debts to a certain amount, and to issue certificates of stock to the stockholders of the other corporation to the amount of the actually paid-up stock held by each one, upon a surrender of the old certificates for cancellation, equity would regard the assets as transferred as a trust fund for the payment of creditors.

In Coggin v. Central R. Co., 62 Ga. 685, 35 Am. Rep. 132, it was held that where one railroad company absorbed another by authority of a statute which cast upon the absorbing company all the contracts of the other, but was silent as to torts, the absorbing company was nevertheless liable for the torts of the corporation absorbed; the court saying:

"The assets of the dissolved company all passed, under the act of 1872, to the Central Railroad & Banking Company, and unless they are insufficient for the purpose—and there is no suggestion that they are—they should, in its hands, be as accessible to those whom the former company had wrongfully injured, as to those whom it had promised to pay."

In Tompkins v. Augusta So. R. Co., 102 Ga. 436, 30 S. E. 992, an action for tort committed by a railroad company thereafter absorbed by defendant, it is said:

"Where a consolidation actually takes place between two such companies, under a written contract providing for the absorption of one of them by the other, but making no provision at all for a certain class of liabilities existing against the company which thus goes entirely out of existence,

these liabilities, by operation of law, become binding upon the new or surviving company, at least to the extent of the assets of the absorbed company, or of its ability to perform the contracts out of which such liabilities arose. To this extent, the successor to the company absorbed would be responsible even in the absence of any statutory liability; for 'where several corporations are united in one, and the property of the old companies is vested in the new, the latter is liable in equity for the debts of the former, at least to the extent of the property received from them. * * * The governing principle here is that a corporation cannot give away its assets to the prejudice of its creditors, but that a court of equity will follow such assets as a trust fund into the hands of any new custodian, the same not being a creditor or bona fide purchaser. It is scarcely necessary to add that, in such a case, the consolidated corporation holds the property received from the absorbed company with notice of any trust attaching to it in favor * * * of a bona fide purchaser without notice.' 1 Thomp. § 375."

In Blanc v. Paymaster Min. Co., 95 Cal. 524, 30 Pac. 765, 29 Am. St. Rep. 149, it was held that where the officers and stockholders of an insolvent corporation formed a new one, and obtained a conveyance to it of the entire property of the old corporation, without paying any consideration therefor, a court of equity would regard the new corporation as a mere continuation of the former corporation under a different name and would hold it liable for the indebtedness of the old corporation—at least to the extent of the value of the property which it received from it without consideration.

In W. F. Taylor Co. v. Gulf & Lbr. Co., 119 La. 426, 44 South. 187, it was held that a new corporation, in the organization of which the stockholders of an old corporation participated, and which, having acquired the stock of the old corporation in exchange for its own, thereafter received a deed of most of the property of the old corporation without paying any consideration, is responsible for the debts of the old corporation.

In Grenell v. Detroit Gas Co., 112 Mich. 70, 70 N. W. 413, it was held that a corporation organized for the purpose of succeeding another which transferred all its property to the new corporation, which issued in payment therefor its stock to the stockholders of the old corporation, took the property subject to the rights of the creditors, including one who had recovered a judgment for damages sustained from negligence.

In Berthold v. Holladay-Klotz Land & Lbr. Co., 91 Mo. App. 233, it was held that where a new corporation was formed to take over the property and business of an old one, most of the assets of which were thereupon transferred to the new corporation, such assets stood charged in the hands of such new company with an equity in favor of the creditors of the old; the continuance of the first company as a corporation de jure after it had ceased to exist as one de facto constituting no barrier to a suit by creditors to enforce their judgment against its property in the hands of its successors.

In Douglas Printing Co. v. Over, 69 Neb. 320, 95 N. W. 656, it was held that where the stockholders of an unprosperous corporation, transferred all their stock to one of their number for the purpose of winding up the business, and he turned over such stock to the mortgagee of the plant of the corporation, and the mortgagee turned it over to a new corporation, in which the principal stockholder of the old corporation was also the principal stockholder, taking a new mortgage from the new corporation, and the old corporation executed a bill of sale of its property to the new corporation, the circumstances attending the creation of the new company and its succession to the business and property of the old one were of such a character as to warrant the finding that the new corporation was a mere continuance of the old one, and liable for its debts.

In Barksdale v. Finney, 14 Grat. (Va.) 338, it was held that a corporation to which all the stock and property of another corporation was transferred, and which had been organized for such purpose, was, as a successor to the former corporation, liable, to the extent of the property received, for the debts and entitled to all the rights of the former corporation.

In Wolff v. Shreveport Gas, etc., Co., 138 La. 743, 70 South. 789, L. R. A. 1916D, 1138, the court said:

"According to the consensus of judicial opinion in this country, a newly organized corporation is liable for the debts of an old one, to the business and property of which it has succeeded, where it is shown that the succession was the result of a transaction entered into in fraud of the creditors of the old corporation, or that the circumstances attending the creation of the new, and its succession to the business and property of the old, were of such a character as to warrant the finding that the new is merely a continuation of the old corporation. The courts are also agreed that there can be no consolidation of corporations, and no merger of one into another and particularly of a domestic into a foreign corporation, without legislative authority, general or specific, and the consent of all of the share-

holders; that the properties of a corporation constitute a trust fund for the payment of its debts; and that, where there has been a misappropriation of such funds, or (according to the better opinion, as we think) the corporation has been divested thereof by consolidation, merger, reorganization, or 'reincarnation,' not only may the fund be followed, by the aid of equity, for the benefit of the creditor, but he may recover, in an action at law, against the corporation which has taken over such fund, with the business of his debtor."

In Wesco Supply Co. v. El Dorado Light, etc., Co., 107 Ark. 424, 155 S. W. 518, it was said:

"If the formation of the new corporation and the taking over of the assets of the old upon the issuance of the $20,000 of the stock of the new corporation to * * * the owner of all the stock in the old corporation, in payment therefor, be regarded a reorganization of the old corporation, the rights of creditors would not be prejudiced thereby."

In Quinn v. Am. Bankers' Assur. Co., 183 Mo. App. 8, 165 S. W. 823, an action to recover for money advanced to the use and benefit of the defendant's predecessor, the American Bankers' Assurance Company, incorporated under the laws of Missouri, it appeared that the defendant was a corporation organized and existing under the laws of the state of Delaware and was a mere continuation of the prior company by the same name, to whose benefit the plaintiff had advanced the money sued for. All of the officers of the Missouri company became the officers and succeeded to the same offices in the Delaware company, and all of the assets of the Missouri company were merely taken over by the Delaware company, and the business continued precisely as if no change whatever had occurred. The court said:

"It appears to be clear enough on substantial grounds and conceded facts that defendant Delaware company is a mere continuation of the prior Missouri company of the same name. Such maneuvering, when sought to be invoked on the part of the successor to defeat the rights of creditors of the prior company, is both in law and equity constructively fraudulent and is ever so declared. This is true because to permit the new company, which amounts to no more than a continuation of the old, to denude the old or debtor company by thus taking over and enjoying all of its assets without answering for its debts and without giving any valid tangible consideration therefor, which may be looked to by the creditors of the old company, entails a fraud upon such creditors not tolerated in either jurisdiction. * * * It is entirely clear that the defendant Delaware corporation is liable for the debts of its predecessor, the Missouri company of the same name, on the principle that the latter continues to exist in the form of the Delaware company, and this is true in law as well as in equity."

In Koch v. Speedwell Motor Car Co., 24 Cal. App. 123, 140 Pac. 598, 600, it was said:

"Where it is affirmatively alleged, or the pleaded circumstances show, that in truth the creation of a new corporation is but the continuation under a new charter of a pre-existing corporation, the new corporation will be held liable for the debts of the old corporation; and, where all of the assets and property of the old corporation have been transferred to the new corporation, such assets and property may be followed by a creditor of the old corporation, and be rightfully subjected to the satisfaction of a judgment obtained against the old corporation. In other words, it is the law generally that the identity of a corporation is not destroyed nor are its legal obligations obliterated by the mere fact of reincorporation under the same or a different name; and in such a case a transfer of the corporate assets from the old to the new corporation will, when warranted by the pleadings and proof, be considered, under the familiar principle of law applicable to fraudulent conveyances, as having been done to hinder, and defraud the creditors of the old corporation."

A corporation is liable for the debts or liabilities of its predecessor where it has by express agreement or by reasonable implication assumed their payment. Ferguson etc., Land, etc., Co. v. Good, 112 Ark. 260, 165 S. W. 628, affirming opinion on former appeal 107 Ark. 118, 153 S. W. 1107, Ann. Cas. 1915A, 544; Landes Bros. v. Eastern Export, etc., Co., 12 Pa. Dist. R. 625, 27 Pa. Co. Ct. R. 630, 19 Montg. Co. Law Rep. 54; Cattlemen's Trust Co. v. Beck (Tex. Civ. App.) 167 S. W. 753; American Bank Note Co. v. Blue-Ridge Elec. Co. (D. C.) 230 Fed. 911. See, also, Stevens v. Selma Fruit Co., 18 Cal. App. 242, 123 Pac. 212.

In this case we hold that, according to the facts disclosed by the record, there was no sale of the property and assets from the Farmers' & Merchants' Bank to Collinsville National Bank, but a merger of two corporations, whereby the Collinsville National Bank became possessed with all the property and assets of the Farmers' & Merchants' Bank, and upon such merger the Collinsville National Bank became chargeable with the debts and obligations of the Farmers' & Merchants' Bank to the extent of the property and assets received.

The judgment of the lower court is therefore affirmed.

By the Court: It is so ordered.